989 So.2d 995 (2008)
Derrick LUCKETT, Appellant
v.
STATE of Mississippi, Appellee.
No. 2007-KA-00982-COA.
Court of Appeals of Mississippi.
September 2, 2008.
Dan W. Duggan, Brandon, Glenn S. Swartzfager, Jackson, Phillip Broadhead, attorneys for appellant.
Office Of The Attorney General by Deshun Martin, Jeffrey A. Klingfuss, attorneys for appellee.
Before KING, C.J., CHANDLER and BARNES, JJ.
KING, C.J., for the Court.
¶ 1. Derrick Luckett was convicted in the Circuit Court of Rankin County of embezzlement and sentenced to serve ten years in the custody of the Mississippi Department of Corrections (MDOC). Aggrieved, *996 Luckett appeals, raising three issues:
I. Whether the State failed to prove the elements of embezzlement and, therefore, the trial court erred by denying Luckett's motion for a directed verdict based on the legal insufficiency of the evidence.
II. Whether the trial court erred in admitting Luckett's prior felony conviction for automobile theft.
III. Whether the verdict was against the overwhelming weight of the evidence and, therefore, the trial court erred by denying Luckett's motion for a new trial.
Finding that the trial court committed reversible error by denying Luckett's motion for a directed verdict, we reverse and render.

FACTS AND PROCEDURAL HISTORY
¶ 2. On April 10, 2005, Wilson Kia hired Luckett to work at the parts counter at its location on Highway 80 in Jackson, Mississippi. Thereafter, on May 22, 2005, Luckett made a trip to Mobile, Alabama with his friend Cecil Rouser and Cecil's girlfriend. Luckett testified that Rouser was driving, and he agreed to share the gas expenses with Rouser. They arrived in Mobile at approximately 3:00 a.m. and attempted to check into a hotel. The clerk informed them that if they checked in at that time, they would have to check out at 11:00 a.m. However, if they waited until 7:00 a.m. to check in, they could have the room for a full twenty-four hours. They decided to wait in the car until 7:00 a.m. Rouser and his girlfriend slept on the backseat, and Luckett slept in the driver's seat.
¶ 3. On that night, Officer Wade Fail with the Mobile Police Department was on patrol in the area of the hotel. Officer Fail explained that there had been many reported automobile thefts in the area and at that particular hotel. At approximately 3:30 a.m., Officer Fail approached the vehicle occupied by Luckett and Rouser because it looked suspicious. First, Officer Fail ran the license plate number and was informed that the license plate had been reported stolen in Mississippi. At that time, Officer Fail took both Luckett and Rouser into custody. Next, Officer Fail ran the vehicle's VIN number, but there was no indication that the vehicle was also stolen. After taking Luckett and Rouser into custody, Officer Fail conducted an inventory of the vehicle and found a checkbook in the car. Officer Fail called the person listed on the checkbook, who informed him that the checks were stolen in a burglary the previous day. Rouser was charged with possession of stolen property for the checkbook, and Luckett was charged with receiving stolen property for the license plate because he was in the driver's seat when Officer Fail approached the car. Luckett spent six days in jail for the charge.
¶ 4. On May 31, 2005, an Alabama police officer contacted Danny Jones, general sales manager for Wilson Auto Group, and asked if the dealership was missing a green Kia Sportage. Jones told the officer that the car in question belonged to the Wilson Kia location on Lakeland Drive in Flowood, Mississippi. The officer then informed Jones that the police found the vehicle in Luckett's and Rouser's possession in Mobile, Alabama and that the vehicle was placed in police custody after the two men were arrested on other charges. Until the call, the Lakeland location did not realize that the green Kia Sportage was missing. Afterward, Wilson Kia contacted local authorities and filed a report on a stolen vehicle. Wilson Kia fired Luckett for job abandonment, instructed him to pick up his last paycheck from the *997 Lakeland location, and informed authorities when he would be there. Upon going to get his paycheck at the Lakeland location, Luckett was arrested for the theft of the green Kia Sportage.
¶ 5. Luckett was indicted by a Rankin County grand jury for embezzlement. Before trial, Luckett filed a motion in limine to exclude evidence of a 2003 felony conviction for automobile theft on the ground that the charge was very similar to the embezzlement charge in this case and was highly prejudicial. The trial court denied Luckett's motion, stating that the prior conviction was admissible to show motive or absence of mistake. At the end of the prosecution's case-in-chief, Luckett moved for a directed verdict, claiming that the prosecution failed to prove embezzlement beyond a reasonable doubt. Although the trial judge expressed concern as to whether the embezzlement charge was appropriate, Luckett's motion was denied. Luckett renewed his motion for a directed verdict at the conclusion of the defense's case-in-chief, and again, the trial court denied the motion. The evidence produced during the trial will be discussed in greater detail below.
¶ 6. Luckett was convicted of embezzlement and sentenced to serve a term of ten years in the custody of the MDOC and to pay court costs, fees, and assessments in the amount of $279.50. Luckett filed a motion for a new trial, which the trial court denied. Subsequently, Luckett timely filed this appeal.

STANDARD OF REVIEW
¶ 7. "A motion for a directed verdict challenges the sufficiency of the evidence." Doss v. State, 906 So.2d 836, 838(¶ 9) (Miss.Ct.App.2004) (citing Williams v. State, 868 So.2d 346, 354(¶ 26) (Miss.Ct. App.2003)). In reviewing a denial of a motion for a directed verdict, this Court must view all evidence in the light most favorable to the verdict. Id. (quoting Jones v. State, 881 So.2d 209, 220(¶ 41) (Miss.Ct.App.2003)). This Court will not reverse unless, "with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." Johnson v. State, 885 So.2d 72, 81(¶ 40) (Miss.Ct.App.2004) (quoting Elder v. State, 750 So.2d 540, 545(¶ 23) (Miss.Ct. App.1999)).

ANALYSIS

Whether the State failed to prove the elements of embezzlement and, therefore, the trial court erred by denying Luckett's motion for a directed verdict based on the legal insufficiency of the evidence.
¶ 8. Luckett contends that the trial court erred by denying his motion for a directed verdict because the State failed to prove the elements of embezzlement beyond a reasonable doubt. Specifically, Luckett argues that the State failed to prove that he was entrusted with the green Kia Sportage by virtue of his employment. Conversely, the State maintains that Luckett, as an employee of Wilson Kia, was entrusted with everything he had access to through his employment.
¶ 9. Mississippi Code Annotated section 97-23-19 (Supp.2007) provides in pertinent part:
If any person shall embezzle or fraudulently secrete, conceal, or convert to his own use, or make way with, or secrete with intent to embezzle or convert to his own use, any goods, rights in action, money, or other valuable security, effects, or property of any kind or description which shall have come or been entrusted to his care or possession by *998 virtue of his office, position, place, or employment, either in mass or otherwise, with a value of Five Hundred Dollars ($500.00) or more, he shall be guilty of felony embezzlement....
In order to prove embezzlement, the State had to provide evidence of the following: (1) Wilson Kia owned the green Kia Sportage; (2) the vehicle was lawfully entrusted to Luckett; and (3) Luckett wrongfully converted the vehicle to his own use. See Montgomery v. State, 891 So.2d 179, 186(¶ 30) (Miss.2004) (citing Medley v. State, 600 So.2d 957, 960 (Miss.1992)). After reviewing the record, we find that the State failed to prove beyond a reasonable doubt that Luckett was entrusted with the green Kia Sportage.
¶ 10. First, the State had to prove that Wilson Kia owned the green Kia Sportage in question. During the trial, Jones testified that in May 2005 Wilson Kia owned a green Kia Sportage bearing the VIN number KNDJF723X57059168. Jones further testified that the green Kia Sportage would have been located at the Lakeland dealership on the east side of the building toward the rear. Later during trial, Officer Fail testified that the green Kia Sportage, in which he found Luckett, Rouser, and Rouser's girlfriend, bore the exact same VIN number previously stated by Jones. Based on this testimony, the State established that Wilson Kia owned the green Kia Sportage in question.
¶ 11. Second, the State had the burden of proving that Luckett was entrusted with the green Kia Sportage. To show entrustment, the State had to present evidence that Luckett lawfully possessed the green Kia Sportage "by virtue of his office, position, place, or employment." See Miss. Code Ann. § 97-23-19. Based on our review of the record, we find that the State failed to provide evidence which established that Luckett was entrusted with the Wilson Kia vehicles held in inventory at the Lakeland location when Luckett was employed solely at the Highway 80 location.
¶ 12. During the trial, Jones testified that Luckett was employed at the parts counter at the Wilson Kia location on Highway 80. In this capacity, Luckett placed orders for parts from the body shop and from customers at the Highway 80 location. Jones further testified that the green Kia Sportage allegedly stolen by Luckett belonged to the Lakeland location. After learning that the vehicle was stolen, Jones searched for the keys to the car, and both sets of keys were found at the Lakeland dealership. When asked if Luckett had access to key-making materials to make keys for cars on either of Wilson Kia's lots, Jones responded with no further explanation that, if needed, Luckett could make an extra key as long as he had the vehicle's VIN number. Jones also testified that one set of keys for the vehicles in inventory at the Lakeland location was kept in a storage closet at the Lakeland location, and all employees had access to the storage closet. When asked if Luckett had permission to take vehicles off the lot by virtue of being an employee of Wilson Kia, Jones stated that he was the only person who could grant such permission, and Luckett never had permission to take vehicles off the lot. On cross-examination, Jones admitted that no one saw Luckett take the vehicle. Jones also stated that he was aware that Luckett did not possess a valid driver's license, which would prohibit Luckett from driving vehicles held in the dealership's inventory under company policy.
¶ 13. During the defense's case-in-chief, Luckett and Jesse Hartley, the Wilson Kia parts manager on Highway 80 and Luckett's former supervisor, testified. On direct examination, Hartley testified that *999 there was not a key-cutting machine at the Highway 80 location. The Wilson Kia location on Highway 80 used A-1 Locksmith, an outside company, to make keys, and Hartley never sent Luckett to A-1 Locksmith to get keys made. Hartley further testified that in order to get a key made, the person must provide proof of ownership of the vehicle, which includes an insurance card and the title to the vehicle. Additionally, Hartley testified that under company policy, Luckett was prohibited from driving vehicles in inventory at Wilson Kia because Luckett did not have a valid driver's license. On cross-examination, Hartley testified that Luckett did not work at the Lakeland location. Thus, he would be surprised if someone said that they saw Luckett at the Lakeland dealership. Luckett gave similar testimony on these matters. Hartley was also asked if Luckett could make a copy of a key for a vehicle at the Lakeland location. He responded that in order to do so, Luckett would have had to gain access to Lakeland's computer system to obtain a key code. Hartley testified that even he, a manager and Luckett's supervisor, did not know how to obtain a password to gain access to Lakeland's database because the access codes were contained in-house. Thus, Hartley explained that there would have to be a breach of security in the Lakeland office to get the access code. Hartley speculated that it might be possible to make keys at the Lakeland dealership if all of these things did in fact occur.
¶ 14. As previously stated, "[a] request for a directed verdict implicates the sufficiency of the evidence." Jones v. State, 872 So.2d 53, 56(¶ 13) (Miss.Ct.App.2003). Based on our review of the record, and giving the prosecution the benefit of all reasonable inferences that can be drawn from the evidence, it is obvious that the State failed to prove every element of embezzlement beyond a reasonable doubt. Specifically, the State failed to prove that Luckett was entrusted with the green Kia Sportage for three reasons.
¶ 15. First, both Jones and Hartley testified that Luckett was employed at the parts counter at Wilson Kia's Highway 80 location. Luckett was not employed at the Lakeland location. As a parts-counter person, Luckett simply ordered parts for the vehicles at the Highway 80 location. Additionally, Jones testified that Luckett did not have permission to take Wilson Kia vehicles off the lot simply by being an employee of Wilson Kia. Based on this testimony, the State failed to prove that Luckett was entrusted with the vehicles at the Lakeland location by virtue of his position.
¶ 16. Second, the green Kia Sportage belonged to the Lakeland location, and testimony established that Luckett was never employed at the Lakeland location. The only time Luckett was seen at the Lakeland location was when he was instructed to pick up his last paycheck there and was arrested by the police. Further, Hartley testified that the access codes for the Lakeland computer system were contained in-house, demonstrating that an employee at the Highway 80 location would not have access to the computer system at the Lakeland location. As Hartley testified, there would have to be a breach of security at the Lakeland location for Luckett to gain access to Lakeland's computer system, obtain a key code, and make a key for a vehicle on Lakeland's lot. The State failed to present any evidence that such occurred. Third, both Jones and Hartley testified that Luckett did not possess a valid driver's license, which under company policy prohibited Luckett from lawfully driving Wilson Kia vehicles as part of his job.
*1000 ¶ 17. Based on our review of the record, and giving the prosecution the benefit of all reasonable inferences that can be drawn from the evidence, it is obvious that the State failed to prove every element of embezzlement beyond a reasonable doubt. The State failed to present any evidence or explanation as to how Luckett had lawful access to the vehicles in inventory at the Lakeland location when (1) Luckett was not entrusted with any Wilson Kia vehicle by virtue of his position; (2) Luckett was not an employee of the Lakeland location where the vehicle was stolen; and (3) Luckett was prohibited from driving vehicles under the company's policy. Basically, we fail to discern the State's logic.

CONCLUSION
¶ 18. Based upon a review of the evidence, we find that the trial court erred by denying Luckett's motion for a directed verdict because the State failed to prove the elements of embezzlement beyond a reasonable doubt. Even the trial court expressed concern regarding the charge during the trial, stating:
I am a little bit concerned about the embezzlement aspect, and I'm not so sure this case wouldn't have been better indicted as a motor vehicle theft, or possession of stolen property....
The prosecutor opted to indict Luckett for embezzlement, and the prosecutor has discretion over what charge to bring in a criminal trial. See Crump v. State, 962 So.2d 154, 158(¶ 16) (Miss.Ct.App.2007) (citations omitted). Having exercised this discretion and opting to charge Luckett with embezzlement, the prosecutor was then obligated to prove that Luckett embezzled the green Kia Sportage beyond a reasonable doubt. However, the prosecution simply failed to meet its burden of proof in this case.
¶ 19. At best, the evidence presented by the prosecution might have shown the actual theft of property, but it did not prove embezzlement. The evidence presented was such that reasonable and fair-minded jurors could only find Luckett not guilty of the crime of embezzlement, and Luckett must be found not guilty of the charged offense. There is no lesser-included offense of embezzlement; thus, the proper remedy in this case is to reverse and render the conviction. See, e.g. Bishop v. State, 755 So.2d 1269, 1273(¶ 18) (Miss.Ct.App.2000) (finding that larceny is not a lesser-included offense of embezzlement). Since this issue is dispositive, we do not address Luckett's remaining assignments of error.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.